UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

| | | | |
|---|---|---|---|
| **CASE NO.:** | CV 17-08825 SJO (E) | **DATE:** | **June 6, 2018** |
| **TITLE:** | Maritza Castrellon v. Fitness Club Management., LLC et al. | | |

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**              **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                         Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR IN THE ALTERNATIVE TO STAY** [Docket No. 23]

This matter is before the Court on Defendants Fitness Club Management, LLC, Harman Fitness, LLC, and Van Nuys Fitness, LLC's (collectively "Defendants") Motion for Judgment on the Pleadings or in the Alternative to Stay ("Motion"), filed April 9, 2018. Plaintiff Maritza Castrellon ("Plaintiff") opposed the Motion on April 23, 2018, and Defendants replied ("Reply") on April 30, 2018. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for May 14, 2018. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** the Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a putative class action complaint on October 23, 2017 in Los Angeles County Superior Court, alleging a single claim for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* (*See generally* Compl., ECF No. 1-1.) On December 7, 2017, Defendants removed Plaintiff's complaint to this Court. (*See generally* Notice of Removal, ECF No. 1.) Plaintiff filed the operative First Amended Complaint ("FAC") on January 12, 2018. (*See generally* FAC, ECF No. 12.) In the FAC, Plaintiff alleges the following:

Defendants run a Crunch Fitness–branded gym in Van Nuys, California. (FAC ¶ 11.) Though Plaintiff was not a member of the gym, she received four unsolicited text messages promoting the gym from Defendants in June and July of 2017. (*See id.* ¶¶ 12-18.) Plaintiff states:

> Plaintiff is informed and believes, and based thereon alleges, that Defendants had a policy and practice of soliciting the telephone numbers of non-members from current Crunch Fitness gym members; that her cellular-telephone number—along with thousands of other cellular-telephone numbers from non-members—was entered into, and stored in, a database maintained by Defendants; and that Defendants sent her the above-alleged text messages by accessing that database

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 17-08825 SJO (E)          DATE: **June 6, 2018**

through the use of equipment capable of dialing the numbers that had been entered into, and stored in, that database, including, but not necessarily limited to, equipment consisting of an internet-to-phone text-messaging platform into which Defendants uploaded or otherwise entered their database of telephone numbers.

(*Id.* ¶ 21.)  Plaintiff responded twice to these messages: "Stop texting!"  (*Id.* ¶ 15; *see id.* ¶ 16.)  According to Plaintiff, these text messages were sent simultaneously to thousands of recipients who neither were members of Defendants' gym nor gave Defendants express permission to send the messages.  (*Id.* ¶ 22.)

II.     DISCUSSION

Defendants move for judgment on the pleadings on the ground that Plaintiff failed to allege that Defendants sent the subject text messages via an automated telephone dialing system ("ATDS"). (Mot. at 1.)  The motion is predicated on the D.C. Circuit's decision in *ACA International v. Federal Communications Commission*, 885 F.3d 687 (D.C. Cir. Mar. 16, 2018), which set aside portions of the Federal Communications Commission's ("FCC") guidance on what may constitute an ATDS.  (*See* Mot. at 9-11.)  Defendants also request a stay of proceedings pending the Ninth Circuit's decision in *Marks v. Crunch San Diego, LLC*, No. 14-56834 (9th Cir. argued Dec. 6, 2016), should the Court deny the motion for judgment on the pleadings.  (Mot. at 11-13.)

      A.     Requests for Judicial Notice

As a threshold matter, the Court discusses the parties' requests for judicial notice.  Federal Rule of Evidence 201(b)(2) permits courts to take judicial notice of facts that are "not subject to reasonable dispute" in that they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  A court "may take judicial notice of court filings and other matters of public record."  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Defendants request judicial notice of three documents: (1) an order of the United States Judicial Panel on Multidistrict Litigation consolidating petitions for review of the FCC's 2015 Declaratory Ruling and Order, the subject of *ACA International*, in the D.C. Circuit; (2) the Ninth Circuit's docket in *Marks* as of April 6, 2018; and (3) the Ninth Circuit's March 22, 2018 order in *Marks* requesting supplemental briefing addressing the effect of *ACA International*.  (*See generally* Request for Judicial Notice in Support of Defendants' Motion, ECF No. 25.)  Plaintiffs did not object to Defendants' request.  The Court **GRANTS** Defendants' request and takes judicial notice of the adjudicative facts in these documents, which, as public filings in the circuit courts, are the proper subjects of judicial notice.

Plaintiff requests judicial notice of the docket in *ACA International*, as well as the twenty-one petitions for rulemaking or requests for clarification addressed in the FCC's 2015 order.  (*See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 17-08825 SJO (E)        DATE: June 6, 2018

*generally* Request for Judicial Notice in Opposition to Defendants' Motion, ECF No. 35.)  As discussed above, the *ACA International* docket is a judicially noticeable document. *See Reyn's Pasta Bella*, 442 F.3d at 746 n.6.  Moreover, a court may take judicial notice of the existence of documents publicly filed with administrative agencies such as the FCC.  *See, e.g., Simon v. Healthways Inc.*, No. CV 14-08022 BRO (JCx), 2015 U.S. Dist. LEXIS 49865, 2015 WL 1568230, at *3 (C.D. Cal. Apr. 7, 2015) (noting that a court may take judicial notice of the existence of documents connected to an FCC petition).  Defendants object to notice of the petitions for review, asserting that this Court lacks jurisdiction to consider the petitions and that the petitions are irrelevant. (Defendants' Objections to Plaintiff's Request for Judicial Notice, ECF No. 35, at 2-3.)  The Court does not have jurisdiction to conduct an independent review of the 2015 FCC ruling. *See Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008) ("The Hobbs Act provides a framework for determining the validity of final FCC orders, a framework that grants exclusive jurisdiction to the circuit courts.").  But that does not prevent the Court from considering the petitions for the purpose for which Plaintiff presents them, to "establish[] that the documents exist . . . [and] that they were filed with the FCC." (ECF No. 35, at 10.)  The D.C. Circuit acknowledged in *ACA International* that the FCC's 2015 ruling addressed these petitions.  *See ACA Int'l*, 885 F.3d at 683.  The Court's acknowledgment of the existence of these documents under Federal Rule of Evidence 201 does not constitute a review of the 2015 FCC ruling.  Moreover, the petitions are relevant to the context and scope of the *ACA International* decision, which is the cornerstone of Defendants' Motion.  The Court **OVERRULES** Defendants' objections and **GRANTS** Plaintiff's request for judicial notice.

    B.    <u>Motion for Judgment on the Pleadings</u>

        1.    <u>Legal Standard</u>

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c) ("Rule 12(c)").  "The principal difference between motions filed pursuant to [Federal Rule of Civil Procedure] 12(b) and Rule 12(c) is the time of filing.  Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  In considering a motion for judgment on the pleadings, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Buckey v. Cty. of L.A.*, 968 F.2d 791, 794 (9th Cir. 1992) (citation omitted).  A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986) (citation omitted).  Judgment on the pleadings is proper when "there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

\\

        2.    <u>Analysis</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 17-08825 SJO (E)            DATE: June 6, 2018

To state a claim under the TCPA, a plaintiff must allege: "(1) the defendant called a cellular telephone; (2) using an automated telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)).  The first and third elements are not at issue in this Motion; instead, Defendants aver that Plaintiff failed to allege adequately that Defendants employed an ATDS to send text messages to her.  (*See* Mot. at 3.)

An ATDS is "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).  The FCC enjoys the authority to promulgate binding regulations interpreting the TCPA.  *See id.* § 227(b)(2); *Hernandez v. Collection Bureau of Am., Ltd.*, No. SACV 13-01626-CJC(DFMx), 2014 U.S. Dist. LEXIS 140661, 2014 WL 4922379, at *3 (C.D. Cal. Apr. 16, 2014) ("[T]he Court is simply bound to apply the FCC's rulings."); *compare* 28 U.S.C. § 2342(1) (granting federal courts of appeals the exclusive jurisdiction to determine the validity of final orders of the FCC), *with* 47 U.S.C. § 402(a) (requiring proceedings "to enjoin, set aside, annul or suspend any order" of the FCC under the TCPA to be brought pursuant to 28 U.S.C. § 2342(1)).

The FCC has exercised this power to clarify and interpret the definition of ATDS.  In 2003, the FCC noted that the ATDS definition "contemplates autodialing equipment that *either* stores *or* produces numbers."  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14092 ¶ 132 (2003) [hereinafter "2003 Order"] (emphasis added).  It observed that "the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective" than using "dialing equipment to create and dial 10-digit telephone numbers arbitrarily."  *Id.*  To that end, the FCC opined that a predictive dialer, equipment a telemarketer uses to dial preprogrammed numbers, is an ATDS. *Id.* at 14093 ¶ 133; *see id.* at 14091 ¶ 131 (noting that the numbers predictive dialers call are, "in most cases," preprogrammed).  The FCC reasoned that "to exclude from these restrictions equipment that use[s] predictive dialing software from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result."  *Id.* at 14092 ¶ 133.  In 2008 and 2012, the FCC affirmed its interpretation that a predictive dialer is an ATDS in declaratory rulings.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 15391, 15392 ¶ 2 n.5 (2012) [hereinafter "2012 Declaratory Ruling"] ("The Commission has emphasized that this definition covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." (citing 2003 Order at 14092 ¶ 133)); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 566 ¶ 12 (2008) [hereinafter "2008 Declaratory Ruling"] ("[W]e affirm that a predictive dialer constitutes an [ATDS] . . . .").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 17-08825 SJO (E)       DATE: June 6, 2018

In 2015, responding to petitions for rulemaking and requests for clarification, the FCC revisited its interpretation of what constitutes an ATDS. *See generally In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7971-78 ¶¶ 10-24 (2015) [hereinafter "2015 Declaratory Ruling"]. It opined that the "capacity" of an ATDS to store or produce and dial numbers "is not limited to its current configuration but also includes its potential functionalities." *Id.* at 7974 ¶ 16. The ruling reaffirmed that predictive dialers are autodialers, *id.* at 7972 ¶ 10 & n.39, but it also indicated that an ATDS must "have the 'capacity' to dial random or sequential numbers," *id.* at 7974 ¶ 15. Moreover, at the same time the FCC indicated that one of "the basic functions of an autodialer [is] to 'dial numbers without human intervention,'" *id.* at 7975 ¶ 17, it declined to "clarify[] that a dialer is not an autodialer unless it has the capacity to dial numbers without human intervention," *id.* at 7976 ¶ 20.

In *ACA International*, 885 F.3d at 692, the D.C. Circuit set aside the FCC's pronouncements regarding autodialers in the 2015 Declaratory Ruling. The D.C. Circuit's decision to vacate portions of the 2015 Declaratory Ruling binds this Court. *See Peck*, 535 F.3d at 1057. The *ACA International* panel concluded that broadly construing the term "capacity" to include potential or future capacity would render every smartphone an ATDS, an "unreasonably, and impermissibly, expansive" interpretation that "fails arbitrary-and-capricious review." *Id.* at 700; *see id.* at 696-700. It also determined that the 2015 Declaratory Ruling failed to offer meaningful guidance as to whether "a device must itself have the ability to generate random or sequential telephone numbers to be dialed" to the extent that the ruling took internally inconsistent positions. *Id.* at 701; *see id.* at 701-03. The D.C. Circuit noted that the 2015 Declaratory Ruling appeared to endorse conflicting positions that an ATDS must or need not have the capacity to generate random or sequential numbers, and that an ATDS must or need not dial numbers without human intervention. *Id.* at 702-03; *see also id.* at 703 ("It might be permissible for the Commission to adopt either interpretation. But the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order."). "The order's lack of clarity about which functions qualify a device as an autodialer compounds the unreasonableness of the Commission's expansive understanding of when a device has the 'capacity' to perform the necessary functions." *Id.* at 703. Thus, the D.C. Circuit "set aside the Commission's treatment of those matters." *Id.*

The parties dispute whether *ACA International* set aside prior FCC pronouncements regarding the ATDS definition, such as the 2003 Order and 2008 Declaratory Ruling. *Compare, e.g.*, Opp'n at 19 ("The pre-2015 rulings therefore remain good law."), *with* Mot. at 11 ("[T]hose rulings are no longer the law."). *ACA International* is not particularly clear on this issue; the panel "set aside the Commission's treatment of those matters" without specifying what was to be set aside. *Id.* at 703.[1]

---

[1] District court decisions responding to *ACA International* are split on the issue. *Compare, e.g.*, *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-GOODMAN, 2018 WL 2220417,

CASE NO.:  CV 17-08825 SJO (E)                          DATE: June 6, 2018

On the one hand, the D.C. Circuit addressed the FCC's argument that the court lacked jurisdiction to review the 2015 Declaratory Ruling to the extent it reaffirmed prior orders.  *ACA Int'l*, 885 F.3d at 701; *see* Brief for Respondents at 36-38, *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) (No. 15-1211).  The D.C. Circuit declared that even though the 2015 Declaratory Ruling purported to affirm prior orders, "that does not shield the agency's pertinent pronouncements from review." *ACA Int'l*, 885 F.3d at 701.  The court determined that it had jurisdiction to review the ATDS issue because the FCC issued a declaratory ruling and denied petitions for rulemaking on the ATDS issue.  *Id.* (citing 5 U.S.C. § 554(e) and *Biggerstaff v. FCC*, 511 F.3d 178, 184-85 (D.C. Cir. 2007)).

On the other hand, even assuming the D.C. Circuit had jurisdiction to review prior ATDS-related pronouncements, the court may not have actually reviewed and set aside the FCC guidance.  The court indicated only that it was reviewing the 2015 Declaratory Ruling, *see, e.g., id.* at 695 ("[W]e assess . . . the Commission's challenged actions in its 2015 order . . . ."), and it discussed the question of jurisdiction only with respect to one of the two ATDS issues it discussed, *see id.* at 701 (discussing whether "the court lacks jurisdiction to entertain petitioners' challenge concerning the functions a device must be able to form," not jurisdictional issues regarding the interpretation of "capacity").  The panel also noted that "[i]t might be permissible for the Commission to adopt either interpretation" of the ATDS statute, taking umbrage only with the ruling's failure to give a clear answer as to whether or not an ATDS must be able to generate random or sequential numbers.  *Id.* at 703.  Moreover, although the D.C. Circuit's opinion cited the 2003 Order and 2008 Declaratory Ruling, it neither referenced nor cited other FCC proceedings interpreting the ATDS statutory definition.  *See, e.g.*, 2012 Declaratory Ruling at 15392 ¶ 2 n.5; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12400 ¶ 19 (1995) (interpreting 47 U.S.C. § 227(b)(1)(B) to "require[] that calls *dialed to numbers generated randomly or in sequence (autodialed)* and delivered by artificial or prerecorded voice message must identify the caller" (emphasis added)); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8776 ¶ 47 (1992) [hereinafter

---

at *11 (S.D. Fla. May 14, 2018) ("At best, *ACA International* arguably calls into doubt the FCC's previous broad statements that predictive dialers are ATDSs regardless of whether they call randomly or from a sequential list or a set list of numbers. . . . In any event, as already explained, absent an express rejection of the prior FCC orders, the Court cannot deviate from [the prior orders] . . . ."), *with Herrick v. GoDaddy.com LLC*, No. CV-16-00254-PHX-DJH, 2018 WL 2229131, at *7 (D. Ariz. May 14, 2018) ("As a result of the D.C. Circuit's holding on this issue, this Court will not defer to any of the FCC's 'pertinent pronouncements' regarding the first required function of an ATDS . . . ."), *and Marshall v. CBE Grp., Inc.*, No. 2:16-cv-02406-GMN-NJK, 2018 U.S. Dist. LEXIS 55223, 2018 WL 1567852, at *5 (D. Nev. Mar. 30, 2018) ("In light of [*ACA International*], the Court will not stray from the [ATDS] statute's language . . . .").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 17-08825 SJO (E)               DATE: June 6, 2018

"1992 Order"] ("The prohibitions of § 227(b)(1) clearly do not apply to functions like 'speed dialing,' 'call forwarding,' or public telephone delayed message services (PTDMS), because the numbers called are not generated in a random or sequential fashion."); *see generally* 2015 Declaratory Ruling at 7971-78 ¶¶ 10-24 (citing the 1992 Order, 2003 Order, 2008 Declaratory Ruling, and 2012 Declaratory Ruling as bases for the FCC's disposition on the scope of the autodialer definition).  It is not likely that the D.C. Circuit would set aside the library of FCC interpretations of the ATDS statutory definition *sub silentio*.

It is also notable that the D.C. Circuit set aside only certain aspects of the 2015 Declaratory Ruling.  It sustained the FCC pronouncements on revocation of consent and the scope of an emergency healthcare exception to TCPA restrictions.  *See ACA Int'l*, 885 F.3d at 692.  The court did not specifically set aside the part of the 2015 Declaratory Ruling that held that an Internet-to-phone text-messaging platform is an ATDS (though that portion of the ruling may have been predicated on the ATDS interpretation the D.C. Circuit did set aside).  *See id.* at 695-703 (discussing and setting aside other sections of the 2015 Declaratory Ruling, not the Internet-to-phone platform section of the ruling); *see also* 2015 Declaratory Ruling at 8017 ¶ 108 ("[E]quipment used to send Internet-to-phone text messages . . . is an autodialer under the TCPA.").  This is the aspect of the 2015 Declaratory Ruling Plaintiff sought to invoke, as expressed in the Joint Rule 26(f) Report.  (ECF No. 18, at 3-4.)

The Court need not decide the scope of the D.C. Circuit opinion's impact, however, because the FAC fails to allege the use of equipment that fits the statutory definition of ATDS, irrespective of FCC interpretations not expressly set aside in *ACA International*.  An ATDS is "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  The equipment Plaintiff identifies is not alleged to have the capability defined in subsection (A).  Plaintiff merely states that Defendants' equipment is "capable of *dialing* the numbers that had been entered into, and stored in," a separately maintained database.  (FAC ¶ 21 (emphasis added).)  That is, the equipment as alleged has the capacity to query a separate database, which handles the storage of cellular telephone numbers.  The FAC contains no allegation that the equipment used also has the present capacity to store or produce those numbers.  The FAC lacks an essential component of what makes an ATDS an ATDS.  *See* 47 U.S.C. § 227(a)(1)(A); *cf. Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (finding the statutory text of the ATDS definition "clear and unambiguous").  Even if the Court considered whether the alleged equipment is a predictive dialer, as Plaintiff encourages, (Opp'n at 13), the FAC still would be insufficient.  A predictive dialer is equipment that, "when paired with certain software, has the *capacity to store or produce numbers* and dial those numbers at random, in sequential order, or from a database of numbers."  2003 Order at 14091 ¶ 131 (emphasis added).  There are no facts here to suggest that the equipment is a predictive dialer with the capacity to "store or produce" numbers.  Instead, the equipment Plaintiff identified is a dialing machine that relies exclusively on an external source—namely, a database Defendants maintain crafted by soliciting telephone numbers from Crunch Fitness gym members—for storage or production of numbers.  (*See* FAC

¶ 21.)  Plaintiff has not plausibly alleged the use of an ATDS, so her sole claim for violation of the TCPA may not proceed.  The FAC is **DISMISSED with leave to amend**.

    C.    Motion to Stay Proceedings

        1.    Legal Standard

The decision regarding whether or not to grant a stay is firmly within the discretion of the district court.  "The trial court's power to administer the court calendar and to control the time and conduct of trial is broad."  *United States v. Doe*, 627 F.2d 181, 183-84 (9th Cir. 1980).  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936).

When considering whether to exercise this discretion, the Court must examine "the competing interests which will be affected by the granting or refusal to grant a stay."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  The relevant interests are: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly cause of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *Id.*  The proponent of a stay bears the burden of showing that a stay is needed.  *Clinton v. Jones*, 520 U.S. 681, 708, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) (citing *Landis*, 299 U.S. at 255).

        2.    Analysis

Defendants move to stay the action pending the Ninth Circuit's decision in *Marks v. Crunch San Diego, LLC*, No. 14-56834 (9th Cir. argued Dec. 6, 2016), which may address whether an ATDS must have the capacity to generate random or sequential numbers and the scope of *ACA International*.  (*See* Mot. at 11-13.)  Like the parties in this action, the parties in the *Marks* appeal have conflicting views as to whether *ACA International* set aside earlier FCC decisions regarding the definition of ATDS.  *Compare* Plaintiff-Appellant's Brief Regarding Decision in *ACA International et al., v. Federal Communications Commission and United States of America* at 3, *Marks v. Crunch San Diego, LLC*, No. 14-56834 (9th Cir. filed Apr. 20, 2018) ("[T]he D.C. Circuit did not set aside the FCC's 2003 and 2008 Rulings regarding the ATDS issue nor could it."), *with* Defendant-Appellee's Response to Plaintiff-Appellant's Brief Regarding Decision in *ACA Int'l v. F.C.C.* at 2, *Marks v. Crunch San Diego, LLC*, No. 14-56834 (9th Cir. filed May 4, 2018) ("[T]he D.C. Circuit expressly set aside the 2003 and 2008 declaratory rulings on the issue and had jurisdiction to do so . . . .").  The Court turns to the factors informing the Ninth Circuit's balancing test to determine whether a stay is appropriate.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: **CV 17-08825 SJO (E)**                DATE: **June 6, 2018**

The Court determines that minimal, if any, damage would result from a stay of this proceeding. Plaintiff's FAC is dismissed, and though she will have the opportunity to amend, amendment may benefit from Ninth Circuit guidance on the ATDS issue and the effect of *ACA International*. Indeed, Plaintiff noted that a decision in *Marks* "might prove useful in ultimately ruling on a dispositive motion." (Opp'n at 4 n.2.) This factor weighs in favor of granting a stay.

As a hardship or inequity, Defendants identify that they "will incur further substantial resources in defense of this action, if it is allowed to continue without any legal basis." (Mot. at 12.) They identify various pending discovery requests and note potential class certification issues. (*See id.*) Various district courts have found that "moving forward with inevitable discovery and motion practice" alone is not sufficient to show hardship. *See, e.g.*, *Mendez v. Optio Sols., LLC*, 239 F. Supp. 3d 1229, 1234-35 (S.D. Cal. Mar. 8, 2017) (collecting cases); *but see Chattanond v. Discover Fin. Servs., LLC*, No. CV 15-08549-RSWL-JCx, 2016 U.S. Dist. LEXIS 24700, 2016 WL 8202736, at *4 (C.D. Cal. Feb. 26, 2016) (identifying "conducting discovery and trial preparation in light of the uncertain . . . definition of an ATDS" as a hardship weighing in favor of a stay). Thus, this factor weighs against granting a stay.

Nevertheless, the Court determines that considerations of judicial economy favor staying the case pending the decision in *Marks*. Issues of the scope of the ATDS definition and the effect of *ACA International* are pending before the Ninth Circuit, which heard oral argument in 2016. *See generally Marks v. Crunch San Diego, LLC*, No. 14-56834 (9th Cir. argued Dec. 6, 2016). The Ninth Circuit's ruling is likely to provide controlling precedent informing this TCPA action. The Ninth Circuit's decision may be dispositive should it determine that dialing equipment without the capacity to use a random or sequential number generator is not an ATDS, or that the FCC's older interpretations of the ATDS definition are not binding or no longer binding. Thus, the stay is likely to simplify or be dispositive of the ATDS issues in this action and, therefore, support "the orderly cause of justice." *Lockyer*, 398 F.3d at 1110.

Weighing these factors, the Court concludes that granting a stay pending the Ninth Circuit's decision in *Marks v. Crunch San Diego, LLC* is appropriate. The motion for a stay is **GRANTED**.

III.     RULING

For the foregoing reasons, the Court **GRANTS** Defendants Fitness Club Management, LLC; Harman Fitness, LLC; and Van Nuys Fitness, LLC's Motion for Judgment on the Pleadings or in the Alternative to Stay. The FAC is **DISMISSED** with leave to amend. The action is **STAYED** pending the resolution of *Marks v. Crunch San Diego, LLC*, No. 14-56834 (9th Cir. argued Dec. 6, 2016). A Status Conference regarding the Ninth Circuit's decision in *Marks* is set for Monday, August 27, 2018 @ 8:30 a.m. The parties shall file a Joint Status Report ten (10) days prior to the conference date.

IT IS SO ORDERED.