Michael J. Jaurigue (SBN 208123)
  michael@jlglawyers.com
JAURIGUE LAW GROUP
300 West Glenoaks Boulevard, Suite 300
Glendale, California 91202
Telephone:  818.630.7280
Facsimile:  888.879.1697

Joseph M. Hekmat (SBN 265229)
  jhekmat@hekmatlaw.com
HEKMAT LAW GROUP
11111 Santa Monica Boulevard, Suite 1700
Los Angeles, California 90025
Telephone:  424.888.0848
Facsimile:  424.270.0242

*Attorneys for Plaintiff Maritza Castrellon*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARITZA CASTRELLON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FITNESS CLUB MANAGEMENT, LLC, a California limited liability company; HARMAN FITNESS, LLC, a California limited liability company; VAN NUYS FITNESS, LLC, a California limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:17-cv-08825 SJO (Ex)<br><br>**SECOND AMENDED CLASS-ACTION COMPLAINT**<br><br>Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1. *Jurisdiction*. Plaintiff Maritza Castrellon filed this action in the Superior Court of the State of California for the County of Los Angeles on October 23, 2017, bearing case number BC680851. Thereafter, on December 7, 2017, Defendants Fitness Club Management, LLC ("Fitness Club"); Harman Fitness, LLC ("Harman Fitness"); and Van Nuys Fitness, LLC ("Van Nuys Fitness") removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, on the ground that the action arises under a law of the United States, specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Federal and state courts have concurrent jurisdiction over suits arising under the TCPA. See Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 745 (2012). This Court therefore has subject-matter jurisdiction over Plaintiff's claim for relief. Furthermore, this Court has personal jurisdiction over Defendants because, as alleged below, each Defendant has had systematic and continuous contacts within the County of Los Angeles, State of California. Also as alleged below, the specific events, omissions, and/or injuries giving rise to Plaintiff's claim for relief occurred within the County of Los Angeles, State of California.

2. *Venue*. As alleged more particularly below, venue is proper in the United States District Court for the Central District of California because Defendants conduct business within the County of Los Angeles, located within the Central District, and because Defendants' acts and/or omissions giving rise to Plaintiff's claim for relief occurred within this District.

## INTRODUCTORY STATEMENT

3. Pursuant to rule 23 of the Federal Rules of Civil Procedure, Plaintiff Maritza Castrellon brings this class action on behalf of herself and all others similarly situated against Defendants Fitness Club, a California limited liability company; Harman Fitness, a California limited liability company; Van Nuys Fitness, a California limited liability; and Does 1 through 10, inclusive.

4. As alleged below, Defendants have violated the TCPA, 47 U.S.C. § 227,

through their unauthorized contact of consumers on the consumers' respective cellular telephones. Specifically, Defendants have violated the TCPA by sending unsolicited text messages without prior express written consent, invading the consumers' right to privacy.

5. Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff and Class Members are entitled to, *inter alia*, statutory damages and injunctive relief for Defendants' violations.

## *PARTIES*

6. Plaintiff is, and at all times relevant to this action was, a California resident of the County of Los Angeles. She is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

7. Plaintiff is informed and believes, and based thereon alleges, that Defendant Fitness Club is a California limited liability company with a principal place of business located at 19867 Prairie Street, Suite 200, Chatsworth, California 91311. Plaintiff is further informed and believes, and based thereon alleges, that Fitness Club is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

8. Plaintiff is informed and believes, and based thereon alleges, that Defendant Harman Fitness is a California limited liability company with a principal place of business located at 18566 Clydesdale Road, Granada Hills, California 91344. Plaintiff is further informed and believes, and based thereon alleges, that Harman Fitness is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

9. Plaintiff is informed and believes, and based thereon alleges, that Defendant Van Nuys Fitness is a California limited liability company with its principal place of business located at 19867 Prairie Street, Suite 200, Chatsworth, California 91311. Plaintiff is further informed and believes, and based thereon alleges, that Van Nuys Fitness is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

10. Plaintiff is ignorant of the true names and capacities of Defendants Does 1 through 10, and she therefore sues them under those fictitious names. Plaintiff is informed and believes, and based thereon alleges, that each of the acts and omissions

alleged herein was performed by, or is attributable to, Fitness Club, Harman Fitness, Van Nuys Fitness, and Does 1 through 10, with each acting as the agent for the others, with each having the legal authority to act on the others' behalves, and with each ratifying every act or omission complained of herein. Plaintiff is further informed and believes, and based thereon alleges, that each Defendant is in some manner intentionally, negligently, or otherwise responsible for the acts and omissions of the other Defendants in proximately causing the damages alleged. Similarly, Plaintiff is informed and believes, and based thereon alleges, that the acts and omissions of each Defendant were in accordance with, and represent, the official policy and practice of all Defendants. Plaintiff will amend the Complaint to allege the true names and capacities of Does 1 through 10 when such names and capacities have been ascertained.

## *GENERAL ALLEGATIONS*

11. Plaintiff is informed and believes, and based thereon alleges, that Fitness Club, Harman Fitness, and Van Nuys Fitness jointly operate, manage, and own a fitness gym located in Van Nuys, California that is licensed to use the "Crunch Fitness" brand. Plaintiff is further informed and believes, and based thereon alleges, that Fitness Club and Harman Fitness also jointly operate, manage, and own other gyms located in the United States that likewise are licensed to use the Crunch Fitness brand.

12. Plaintiff is informed and believes, and based thereon alleges, that all of the Crunch Fitness gyms operated, managed, and owned by Defendants require consumers to become members in order to use the facilities. At no time was Plaintiff ever a member of any Crunch Fitness gym.

13. On or about June 28, 2017, Plaintiff received the following unsolicited text message from Defendants:

> Hey its Heather @Crunch Van Nuys! Our Sneak Peak party is this Sat 7/1 @10a! Raffle prizes, music, food with awesome specials! Please RSVP. Can you make it?

Plaintiff did not respond to this text message.

14. On or about July 1, 2017, Plaintiff received another unsolicited text from Defendants, this time stating:

> Hi! Last chance to stop by our Crunch Fitness Van Nuys Sneak Peek party today & get pre-opening rates. A ton of raffle prizes, music & food! Can you make it?

Plaintiff did not respond to this text message.

15. On or about July 10, 2017, Plaintiff received a third unsolicited text message from Defendants, stating:

> Hi its Heather at Crunch Fitness! Come see us this Thursday the 13th for awesome enrollment specials & dues as low as $9.95 per month! Can you make it?

Plaintiff responded to this message by texting back, "Stop texting!"

16. On or about July 13, 2017, Plaintiff received a fourth unsolicited text message from Defendants, stating:

> Hey its Heather at Crunch Fitness! Come see us today for incredible enrollment specials and dues as low as $9.95 per month! Can you make it?

Plaintiff responded to this text as well, texting back, "Stop textin!"

17. As is apparent from the content of the four above-alleged text messages, the messages were sent without an emergency purpose; instead, they promote the purchase of Crunch Fitness memberships.

18. Again, at no time was Plaintiff ever a member of any Crunch Fitness gym; indeed, Plaintiff had never even visited any Crunch Fitness gym location. In any event, Plaintiff never gave any signed authorization to anyone expressly permitting Defendants, or anyone acting on any of their respective behalves, to use her cellular-telephone number for telemarketing or advertising purposes.

19. Plaintiff's cellular-telephone number is linked to a subscription plan under which she is charged each month for cellular-telephone and data services.

20. Plaintiff is informed and believes, and based thereon alleges, that the text

messages referenced in paragraphs 13 through 16 were sent by Defendants, and that Defendants controlled and were responsible for both the content and delivery of the messages; alternatively, the messages were sent by at least one of the Defendants acting at the direction of the other Defendants to send the messages or to conduct promotional activities, with the other Defendants' full knowledge and consent, and to the benefit of all Defendants.

21. Plaintiff is informed and believes, and based thereon alleges, that Defendants had a policy and practice of soliciting the telephone numbers of non-members from current Crunch Fitness gym members; that her cellular-telephone number—along with thousands of other cellular-telephone numbers from non-members—was entered into, and stored in, a database maintained by Defendants; and that Defendants sent her the above-alleged text messages by accessing that database through the use of equipment capable of dialing the numbers that had been entered into, and stored in, that database, including, but not necessarily limited to, equipment consisting of an internet-to-phone text-messaging platform into which Defendants uploaded or otherwise entered their database of telephone numbers.

22. Plaintiff is further informed and believes, and based thereon alleges, that the dialing equipment used by Defendants to send text messages to Plaintiff was capable, at the time that the texts were sent to her, of storing or producing numbers accessed through Defendants' database and further capable of randomly or sequentially dialing those numbers.

23. Plaintiff is informed and believes, and based thereon alleges, that Defendants, working together pursuant to the arrangement alleged in paragraphs 20 and 21, sent the above-referenced text messages, as well as thousands of similar text messages, *en masse* to the cellular telephones of non-members using the equipment referenced in paragraphs 21 and 22.  In addition, Plaintiff is informed and believes, and based thereon alleges, that all of the above-alleged text messages that Plaintiff received—which do not identify any specific recipient by name and which are impersonal in

nature—were simultaneously transmitted to thousands of non-members. Plaintiff is further informed and believes, and based thereon alleges, that these text messages were sent even though Defendants had never obtained signed authorizations from any non-members expressly permitting the transmission of advertising or telemarketing messages.

/ / / / /

## *CLASS-ACTION ALLEGATIONS*

24. Plaintiff seeks to represent the following Classes under section 382 of the Code of Civil Procedure:

> *Class 1:* All persons throughout the United States who were not members of a Crunch Fitness gym and who, since October 24, 2013, received at least one text message transmitted by, or on behalf of, any of the Defendants on their cellular telephones.
>
> *Class 2 (Sub-Class):* All persons throughout the United States who were not members of a Crunch Fitness gym and who, since October 24, 2013, received at least one text message transmitted by, or on behalf of, any of the Defendants on their cellular telephones concerning the Crunch Fitness gym located in Van Nuys, California.

25. Plaintiff reserves the right to amend or modify the proposed Classes, or to propose subclasses or limitations to particular issues, in response to facts later ascertained.

26. *Numerosity*. The identities of Class Members may be ascertained from Defendants' own business and marketing records, as well as the records of Defendants' telephone provider(s). Joinder of all Class Members would be impracticable due to the sizeable number of such Members and their likely lack of resources to initiate individual claims. Plaintiff estimates that thousands of text messages were sent to well-over the forty individuals required for numerosity purposes. Also, as explained below, the amount that is owed to any given Class Member under the TCPA is relatively small, making it impractical for them to bring their own individual suits.

27. ***Commonality and Predominance***. There are questions of law and fact that are common to the Classes that predominate over any questions affecting only individual Class Members. These common questions include, without limitation:

    a) Whether the text messages constitute telemarketing or advertising within the meaning of the TCPA and its regulations;

    b) Whether the equipment used to send the text messages constitutes an automatic telephone dialing system within the meaning of the TCPA and its regulations;

    c) Whether prior express written consent was required under the TCPA before sending any of the text messages; and

    d) Whether the outright failure to obtain prior express written consent to receive the messages constitutes willful and knowing behavior within the meaning of the TCPA and its regulations.

28. ***Typicality***. Plaintiff's claims are typical of those of the Classes because she received at least one telemarketing or advertising text message concerning the Crunch Fitness gym located in Van Nuys, California on or after October 16, 2013; she never provided prior express written consent to receive any such messages; and the message was sent using the same equipment used to send text messages to all Class Members on their respective cellular telephones.

29. ***Adequacy***. Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff is not aware of any conflicts with Class Members, and she plans on pursuing the litigation vigorously. She also has the same interests as those of the Classes, and has retained counsel who are competent and experienced in class-action litigation. In addition, Plaintiff has been actively involved in the litigation, she will continue to participate and be available for the duration of the litigation, and she understand the duties that she holds to the Classes.

30. ***Superiority***. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Again, the individual joinder of all Class Members is impracticable because of the relatively small recovery amounts at stake and

the relative lack of resources available for individual Class Members vis-à-vis the large corporate Defendants. Additionally, the judicial system would be burdened with multiple trials of the same issues, and the potential for inconsistent or contradictory judgments would increase. The common questions detailed above, in fact, predominate in this action, as Class Members' claims arise out of the same course of conduct to which Plaintiff herself was subject. A class action therefore would conserve the resources of the parties and the Court while protecting the rights of Class Members. Defendants' conduct as described above is unlawful, continuing, capable of repetition, and will continue unless restrained and enjoined by the Court. Moreover, it is a matter of public interest to obtain definitive answers to the legality of Defendants' actions in a single case.

### FIRST CLAIM FOR RELIEF

*Violation of the TCPA*

*47 U.S.C. § 227*

31. Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

32. The United States Congress enacted the TCPA in order to balance individual privacy rights with legitimate telemarketing practices. In enacting this statute, Congress found:

> (1) The use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques.
>
> . . . .
>
> (10) Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> (11) Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or

1  place an inordinate burden on the consumer.

2  (12) Banning such automated or prerecorded telephone calls to the
3  home, except when the receiving party consents to receiving the call or when
4  such calls are necessary in an emergency situation affecting the health and
5  safety of the consumer, is the only effective means of protecting telephone
6  consumers from this nuisance and privacy invasion.

7  TCPA of 1991, PL 102–243, December 20, 1991, 105 Stat 2394.

8  33.  The TCPA specifically prohibits automated calls or messages to consumers'
9  cellular-telephone numbers without first obtaining the express consent or permission of
10 the consumers:

11  It shall be unlawful for any person within the United States, or any
12  person outside the United States if the recipient is within the United States[,]
13  (A) to make any call (other than a call made for emergency purposes or
14  made with the prior express consent of the called party) using any automatic
15  telephone dialing system . . . (iii) to any telephone number assigned to a . . .
16  cellular telephone service . . . .

17 47 U.S.C. § 227(b)(1).  A text message is a "call" within the meaning of the TCPA.  E.g.,
18 Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009).

19  34.  Under the relevant regulation, effective October 16, 2013, "prior express
20 consent" as used in subsection (b)(1)(A)(iii) of the TCPA means "prior express *written*
21 consent" for all telemarketing or advertising messages.  47 C.F.R. § 64.1200(a)(2)
22 (emphasis supplied).  Such consent must be signed by the consumer; disclose that the
23 consumer authorizes the entity on whose behalf the message is sent to deliver, or cause to
24 be delivered, telemarketing messages by way of an automatic telephone dialing system;
25 and disclose that the consumer is not required to provide consent as a condition of
26 purchasing any goods or services.  Id. § 64.1200(f)(8).

27  35.  The foregoing acts and omissions of Defendants constitute a direct violation
28 of the TCPA.  Consequently, Plaintiff's right to privacy was violated and she further was

annoyed and harassed by the multiple marketing text message sent by Defendants. Defendants were and are aware of the TCPA and its requirements, and, on information and belief, intentionally violated the law in an effort to maximize the reach of their program. Defendants' violations therefore were willful.

36. The TCPA establishes a private right of action for sending unauthorized messages to consumers:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions. If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3). Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff and Class Members are entitled to an award of $500 in statutory damages for each and every text message that they received. Moreover, because Defendants willfully and knowingly violated the TCPA as alleged above, Plaintiff and Class Members are entitled to treble damages. Finally, pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff and Class Members are entitled to injunctive relief.

/ / / / /

## *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. An order certifying the Classes under rule 23 of the Federal Rules of Civil Procedure;

2. Judgment in favor of Plaintiff and Class Members for the period of time since October 16, 2013, for statutory treble damages against Defendants, as well as for injunctive relief;

3. An award of pre-judgment and post-judgment interest, to the extent allowable by law;

4. An award of attorney's fees and costs of suit, to the extent allowable by law; and

5. Such further relief as the Court deems fit and proper.

Dated: November 19, 2018

JAURIGUE LAW GROUP
HEKMAT LAW GROUP

/s/ *Michael J. Jaurigue*
Michael J. Jaurigue
Joseph M. Hekmat
*Attorneys for Plaintiff*

## *DEMAND FOR JURY TRIAL*

Plaintiffs request a trial by jury as to all claims for relief.

Dated: November 19, 2018

JAURIGUE LAW GROUP
HEKMAT LAW GROUP

/s/ *Michael J. Jaurigue*
Michael J. Jaurigue
Joseph M. Hekmat
*Attorneys for Plaintiff*