SHELDON EISENBERG (SBN 100626)
sheldon.eisenberg@dbr.com
ZOË K. WILHELM (SBN 305932)
zoe.wilhelm@dbr.com
DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067-1517
Telephone: 310-203-4000
Facsimile: 310-229-1285

Attorneys for Defendants
FITNESS CLUB MANAGEMENT, LLC,
HARMAN FITNESS, LLC and VAN NUYS
FITNESS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARITZA CASTRELLON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FITNESS CLUB MANAGEMENT, LLC, a California limited liability company; HARMAN FITNESS, LLC, a California limited liability company; VAN NUYS FITNESS, LLC, a California limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 2:17-CV-8825 SJO (Ex)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STAY**<br><br>Date: March 18, 2019<br>Time: 10:00 a.m.<br>Crtrm: 10C<br>Judge: Hon. S. James Otero<br><br>*[Notice of Motion and Motion; Request for Judicial Notice; Declaration of Zoë K. Wilhelm; and [Proposed] Order filed concurrently herewith]* |

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................. 1

II. BACKGROUND ............................................................................................. 1

III. ARGUMENT .................................................................................................. 3

    A.    Standards for Determining Motion. ....................................................... 3

    B.    The Court Should Stay This Action Pending the FCC's Rulemaking Interpreting the Definition of "ATDS." ........................... 3

        1.    What Equipment Qualifies as an ATDS ..................................... 3

        2.    This Action Should Be Stayed Under the Primary Jurisdiction Doctrine .................................................................. 5

        3.    This Action Could Also Be Stayed Under the Court's Inherent Authority .......................................................................... 7

    C.    In the Alternative, The Court Should Stay This Action Pending The Issuance of a Mandate in *Marks*. ..................................................... 8

IV. CONCLUSION ............................................................................................... 9

# I.

# INTRODUCTION

Plaintiff Maritza Castrellon ("Plaintiff") asserts a single claim that Defendants used an automated telephone dialing system to send her text messages without her consent, in violation of the Telephone Consumer Protection Act ("TCPA"). The Court previously stayed this action pending the resolution of *Marks v. Crunch San Diego, LLC*, No. 14-56834 (9th Cir.), noting that the stay "[wa]s likely to simplify or be dispositive of the ATDS [automatic telephone dialing system] issues in this action and, therefore, support 'the orderly cause of justice.'" Order Granting Defendants' Motion for Judgment on the Pleadings or in the Alternative to Stay, ECF No. 43, June 6, 2018 (also dismissing the complaint with leave to amend). Given recent developments, Defendants respectfully request that the Court again issue a stay.

***First***, the Court should temporarily stay this action because Plaintiff's claim turns on (among other things) a potentially dispositive legal issue that the FCC is actively reviewing, specifically what equipment qualifies as an "automatic telephone dialing system" or "ATDS." Because the answer to this question could simplify or dispose of this action in its entirety and the FCC is actively reviewing the question, the Court should stay this action in its entirety and await the FCC's guidance.

***Second***, if the Court does not stay this action pending FCC guidance, the Court should do so because the Ninth Circuit has stayed the mandate in *Marks* and petition for writ of certiorari has been filed. A Supreme Court review of the current circuit split could similarly simplify or dispose of this action in its entirety, warranting a stay.

# II.

# BACKGROUND

Plaintiff originally filed this action on October 23, 2017 in Los Angeles

County Superior Court.  (ECF No. 1-1 at 3-13.)  The gravamen of her Complaint is that in June and July 2017, she was sent four (4) text messages without her consent, through use of an ATDS, in violation of the TCPA.   On December 7, 2017, Defendants Fitness Club Management, LLC, Harman Fitness, LLC, and Van Nuys Fitness, LLC ("Defendants") removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.  (ECF No. 1.)  Pursuant to stipulation, on January 12, 2018, Plaintiff filed her First Amended Class-Action Complaint [ECF No. 12].

In March of last year, the United States Court of Appeals for the District of Columbia vacated the FCC rulings defining an ATDS as arbitrary and capricious, *see ACA Int'l v. Fed. Communc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018).  On June 6, 2018, the Court dismissed Plaintiff's amended complaint without prejudice due to Plaintiff's failure to properly allege the use of an ATDS and stayed the action pending the Ninth Circuit's determination of the impact of that D.C. Circuit ruling in *Marks v. Crunch San Diego*, No. 14-56834 (9th Cir.).  (ECF No. 43.)  The Ninth Circuit issued its opinion on September 20, 2018.  *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 WL 4495553 (9th Cir. Sept. 20, 2018).  Pursuant to the Court's August 21, 2018 order (ECF No. 45), the parties filed a joint status report within seven days of the issuance of the opinion on September 27, 2018. (ECF No. 49.)  The Court lifted the stay on October 15, 2018.  (ECF No. 52.)

On November 19, 2018, Plaintiff filed a Second Amended Complaint ("SAC") [ECF No. 54] alleging that "Plaintiff is further informed and believes, and based thereon alleges, that the dialing equipment used by Defendants to send text messages to Plaintiff was capable, at the time that the texts were sent to her, of storing or producing numbers accessed through Defendants' database and further capable of randomly or sequentially dialing those numbers."  Defendants answered the SAC on December 3, 2018.  (ECF No. 55.)

# III.

# ARGUMENT

## A. Standards for Determining Motion.

A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings in other jurisdictions. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This discretion is "incident to [a district court's] power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997); *see also Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (internal quotation marks omitted). A stay is appropriate in a case where the outcome of another action may substantially affect it. *See Stone v. Sterling Infosystems, Inc.*, No. 2:15-CV00711-MCE-DAD, 2015 WL 4602968, at *2 (E.D. Cal. July 29, 2015).

## B. The Court Should Stay This Action Pending the FCC's Rulemaking Interpreting the Definition of "ATDS."

The Court should temporarily stay this action because Plaintiff's claim turns in part on a potentially dispositive issue that the FCC is actively reviewing: what qualifies as an ATDS.

### 1. What Equipment Qualifies as an ATDS

Plaintiff's claim turns in large part on whether the text messages were sent using an ATDS. *See* SAC ¶¶ 33 ("It shall be unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) ***using any automatic telephone dialing system*** . . . to any telephone number assigned to a . . . cellular telephone service . . . ." (quoting 47 U.S.C. § 227(b)(1)(A)(iii))) (emphasis added). As it happens, however, the FCC is actively reviewing what that definition means and what equipment does and does not fall within its scope. Indeed, it is no exaggeration to say that this issue is at the

top of the FCC's agenda.

The FCC's renewed focus on this issue is a response to *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), which set aside much of the FCC's Declaratory Ruling from 2015. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015) ("2015 Declaratory Ruling"). Although the statute defines an ATDS by reference to two specific functionalities—specifically, the ability to not only "dial … numbers" but also to "us[e] a random or sequential number generator" to "store or produce telephone numbers to be called," *see* 47 U.S.C. § 227(a)(1)—the FCC had previously suggested that it may extend to virtually any equipment that can dial numbers in high volumes. *See* 2015 Declaratory Ruling, 30 FCC Rcd. at 7974. That ruling was immediately appealed to the D.C. Circuit, which found earlier this year that the FCC's approach had an "eye-popping sweep" that would extend to "ordinary calls from any conventional smartphone." *ACA Int'l*, 885 F.3d at 692. Indeed, so striking was the D.C. Circuit's rebuke that it necessarily invalidated not only the 2015 Declaratory Ruling but also a decade's worth of prior FCC rulings on which the Declaratory Ruling was based.[1]

The FCC—which in the meantime had been reconstituted under a new Chairman who had ***dissented*** from the 2015 Declaratory Ruling—quickly set to work. Indeed, within a week it had issued a Public Notice seeking comments.[2] Insofar as the ATDS issue is concerned, it sought comment on "how to more

---

[1] *See Washington v. Six Continents Hotels, Inc.*, No. 16-3719, 2018 WL 4092024, at *3 (C.D. Cal. Aug. 24, 2018); *Gonzalez v. Ocwen Loan Servicing, LLC*, No. 18-340, 2018 WL 4217065 (M.D. Fla. Sept. 5, 2018); *Keyes v. Ocwen Loan Servicing, LLC*, No. 17-11492, 2018 WL 3914707 (E.D. Mich. Aug. 16, 2018) (on appeal); *Pinkus v. Sirius XM Radio, Inc.*, No. 16-10858, 2018 WL 3586186 (N.D. Ill. July 26, 2018); *Lord v. Kisling, Nestico & Redick, LLC*, No. 17-1739, 2018 WL 3391941 (N.D. Ohio July 12, 2018); *Sessions v. Barclays Bank Delaware*, 317 F. Supp. 3d 1208 (N.D. Ga. 2018); *Herrick v. GoDaddy.com LLC*, 312 F. Supp. 3d 792 (D. Az. 2018) (on appeal).

[2] *See* Public Notice, DA 18-493, *Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision*, CG Docket No. 18-0152, CG Docket No. 02-0278 (released May 14, 2018) (attached as **Exhibit 1** to Request for Judicial Notice ("RJN")).

narrowly interpret" the statute "to better comport with the congressional findings and the intended reach of the statute." *Id.* at 2; *see also id.* (seeking comment "on the functions a device must be able to perform"); *id.* at 3 (seeking comment on whether equipment is an ATDS if it "cannot itself dial random or sequential numbers"); *id.* (seeking comment on whether the statute applies "only to calls made using the equipment's [ATDS] functionality"); *id.* ("If a caller does not use equipment as an [ATDS], does the statutory prohibition apply?"). The FCC set the comment period to close in June 2018—a mere six weeks later.

The FCC is not only reviewing those comments but also monitoring new judicial rulings. For example, after the Ninth Circuit's decision in *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 WL 4495553 (9th Cir. Sept. 20, 2018), it issued a Public Notice seeking further comment on "what constitutes an [ATDS]."[3] Because the Ninth Circuit split from the D.C. Circuit and continued to "interpret[] the statutory language expansively," the FCC sought further comment on "how to interpret and apply the statutory definition . . . in light of the recent decision in *Marks*" and "how that decision might bear on the analysis set forth in *ACA International*." *Id.* The FCC set the comment period to close in October 2018—a mere three weeks later. In short, the FCC is keenly interested in this issue, moving with all deliberate speed (somewhat hampered by the recent government shutdown), and expected to rule shortly.

### 2. This Action Should Be Stayed Under the Primary Jurisdiction Doctrine

The primary jurisdiction doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body . . . ." *United*

---

[3] *See* Public Notice, DA 18-1014, *Consumer and Governmental Affairs Bureau Seeks Further Comment on Interpretation of the Telephone Consumer Protection Act in Light of the Ninth Circuit's Marks v. Crunch San Diego, LLC Decision*, CG Docket No. 18-152, CG Docket No. 02-278 (released Oct. 3, 2018) (attached as **Exhibit 2** to RJN).

*States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003) (explaining that primary jurisdiction doctrine "seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime."); *Far E. Conference v. United States*, 342 U.S. 570, 574-75 (1952) (noting "firmly established" principle that "[u]niformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure[s]."). It is "a doctrine specifically applicable to claims properly cognizable in [federal] court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993); *W. Pac. R.R. Co.*, 352 U.S. at 64. As such, "the judicial process is suspended pending referral of such issues to the administrative body for its views." *Id.*

Although there is no fixed formula, "[t]here are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Pickens v. Am. Credit Acceptance, LLC*, No. 14-0201, 2014 WL 4662512, at *1 (S.D. Ala. Sept. 19, 2014) (citations omitted). Here, each factor weighs in favor of staying this action. That the first factor is met is apparent from the face of the Complaint, which pleads a claim that hinges on whether one of the Defendants used an ATDS. Compl. ¶ 22. The second and third factors are likewise met because Congress has given the FCC the authority to implement the TCPA, which is "a comprehensive regulatory

scheme" governing dialing equipment. *Pickens*, 2014 WL 4662512, at *2; 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection."). The fourth factor is also met because the FCC has specialized expertise on telecommunications issues and because awaiting its guidance would allow for uniform adjudication. Finally, a stay would also promote the overarching purpose of the primary jurisdiction doctrine, that is, "to produce better informed and uniform legal rulings." *Walsh*, 538 U.S. at 673. Accordingly, this Court should issue a temporary stay during the pendency of the FCC proceeding.

### 3. This Action Could Also Be Stayed Under the Court's Inherent Authority

Alternatively, the Court could stay this action pursuant to its inherent authority to manage its docket. It is well-settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding to grant a stay, courts consider three factors: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward with the case; and (3) the orderly course of justice measured in terms of the simplifying or complicating issues, proof, and questions of law, which could be expected to result from a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *Landis*, 229 U.S. at 254); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

A stay is warranted here. Plaintiff will suffer no prejudice from a temporary stay, as the only damages she seeks are statutory damages for two text messages, as opposed to compensation for prior economic loss. Plaintiff has only recently started over by filing a newly amended complaint. Indeed, when staying the action last year, the Court noted, "minimal, if any, damage would result from a stay of this

1  proceeding." Order Granting Defendants' Motion for Judgment on the Pleadings or
2  in the Alternative to Stay ("Stay Order"), ECF No. 43, at 8 (noting Plaintiff would
3  have to file a new complaint).

4  Furthermore, a stay will benefit all parties and the Court by allowing the FCC
5  to weigh in on critical questions, while avoiding litigation and discovery expenses
6  in the interim—all of which may be rendered moot. *See, e.g.*, *Errington v. Time
7  Warner Cable Inc.*, No. 15-2196, 2016 WL 2930696, at *4 (C.D. Cal. May 18,
8  2016) (staying TCPA action pending the *ACA International* appeal because
9  "possible prejudice to Plaintiff is minimal" and "Defendant may suffer hardship in
10 conducting discovery and trial preparation in light of the uncertain difference
11 between 'potential' capacity and 'theoretical' capacity under the definition of an
12 ATDS."). Indeed, the FCC's answers to these issues may dispose of this action
13 entirely. Allowing the FCC to rule will undoubtedly promote judicial economy and
14 simplify the issues for the Court and parties alike. *See* Stay Order at 9
15 ("[C]onsiderations of judicial economy favor staying the case."). It follows that a
16 temporary stay of this action would be appropriate under the Court's inherent
17 authority even if the primary jurisdiction doctrine did not apply for some reason.

18 **C.   In the Alternative, The Court Should Stay This Action Pending The Issuance of a Mandate in *Marks*.**

19 The Court previously recognized that a stay was warranted pending
20 resolution of *Marks*. Stay Order. Now that the Ninth Circuit has stayed the
21 mandate and a petition for writ of certiorari has been filed, it is evident that the
22 *Marks* action has not yet been resolved. *See* November 7, 2018 Order, *Marks v.
23 Crunch San Diego, LLC*, No. 14-56834 (9th Cir.) attached as **Exhibit 3** to RJN;
24 Petition for Writ of Certiorari, *Crunch San Diego, LLC v. Marks*, No. 18-995 (U.S.,
25 *docketed* Jan. 30, 2019) attached as **Exhibit 4**. Indeed, in a TCPA action pending
26 the Northern District of California, the court found it was appropriate to stay the
27 case pending *Marks* and subsequently refused to lift the stay until issuance of the

mandate. *Wainwright v. Bluestem Brands, Inc.*, No. 17-cv-03041-JST, 2018 WL 33990027 (N.D. Cal. June 29, 2018) (staying the case sua sponte "pending a final decision in *Marks*"), Order Terminating Renewed Motion for Summary Judgment, *Wainwright v. Bluestem Brands, Inc.*, No. 17-cv-03041-JST, ECF No. 51 (N.D. Cal. Oct. 16, 2018) (ordering the party to file a renewed motion only after the issuance of a mandate in *Marks*) (attached as **Exhibit 5** to RJN).

Against this backdrop, it makes no legal or practical sense for the parties to start over with a pleading based on a Ninth Circuit ruling that is in question. As discussed above, minimal, if any, damage will result from a stay. And a precedential ruling from the Ninth Circuit or the Supreme Court on these issues would control any further proceedings on this issue in this action. The Court should therefore stay this action, pending the issuance of the Ninth Circuit mandate in *Marks*.

## IV.
## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for stay pending the FCC's rulemaking and/or the Ninth Circuit's issuance of a mandate in *Marks*.

Dated:  February 15, 2019              DRINKER BIDDLE & REATH LLP


By:s/ *Zoë K. Wilhelm*
    Sheldon Eisenberg
    Zoë K. Wilhelm

Attorneys for Defendants
FITNESS CLUB MANAGEMENT, LLC, HARMAN FITNESS, LLC and VAN NUYS FITNESS, LLC